UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x
                                     :
UNITED STATES OF AMERICA             :     **SEALED INDICTMENT**
                                     :
            - v. -                   :     21 Cr. ____
                                     :
VITALY FARGESEN and                  :
IGOR PALATNIK,                       :
                                     :
            Defendants.              :     **21 CRIM 602**
                                     :
- - - - - - - - - - - - - - - - - - x

## COUNT ONE
### (Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

### Relevant Individuals and Entities

1.    At all times relevant to this Indictment until on or about March 9, 2020, CanaFarma Corp. was a privately-held Delaware corporation with offices in Manhattan, New York.

2.    At all times relevant to the Indictment until on or about March 9, 2020, KYC Technology Inc. ("KYC") was a Canadian public company with no stock listed on any public stock exchange. On or about March 9, 2020, as part of a reverse merger, KYC acquired CanaFarma Corp. and began doing business as CanaFarma Hemp Products Corp. (together with CanaFarma Corp., "CanaFarma").

3.    At all times relevant to the Indictment beginning on or about March 19, 2020, CanaFarma was listed on the Canadian Stock Exchange ("CSE"), and beginning on or about March 23, 2020, CanaFarma was listed on the Frankfurt Stock Exchange ("FSE").

1

4.    At all times relevant to this Indictment VITALY FARGESEN, the defendant, was held out to the public as Senior Vice President of Strategic Planning at CanaFarma.

5.    At all times relevant to this Indictment IGOR PALATNIK, the defendant, was held out to the public as Senior Vice President of Product Acquisition at CanaFarma.

6.    At all times relevant to this Indictment until in or about March 2020, a co-conspirator not named as a defendant herein ("CC-1") was Senior Vice President of Sales and Marketing at CanaFarma. At all times relevant to this Indictment after in or about March 2020, CC-1 was the Chief Operating Officer ("COO") of CanaFarma.

7.    At all times relevant to this Indictment until in or about March 2020, a co-conspirator not named as a defendant herein ("CC-2") was Senior Vice President of Sales and Marketing at CanaFarma. At all times relevant to this Indictment after in or about March 2020, CC-1 was Senior Vice President of CanaFarma.

## Overview of the Scheme to Defraud

8.    From in or about March 2019 through at least in or about October 2020, VITALY FARGESEN and IGOR PALATNIK, the defendants, devised and carried out a scheme to defraud CanaFarma's investors by soliciting more than $14 million in funds, including investments in private shares of CanaFarma, with false and misleading representations concerning the company's management, products, and

2

financials, failing to invest investor's funds as promised, causing the manipulation of the public stock price of CanaFarma for the purposes of advancing the scheme to defraud investors and enriching themselves, and secretly misappropriating at least $4 million of CanaFarma funds for their own benefit.

9. VITALY FARGESEN and IGOR PALATNIK, the defendants, effectuated the scheme by: (a) purchasing a Canadian shell company, KYC, through a straw purchaser; (b) directing the reverse merger of KYC and CanaFarma to exercise secret control of the resulting publicly traded company; (c) controlling CanaFarma through a nominal Chief Executive Officer (the "Purported CEO") who reported to FARGESEN and PALATNIK; (d) supporting CanaFarma's stock price through manipulative trading; (e) attempting to artificially inflate CanaFarma's reported revenue; and (f) making false statements to CanaFarma's auditors.

**The Scheme**

**FARGESEN and PALATNIK Secretly Control KYC and CanaFarma**

10. From at least as early as October 2018, VITALY FARGESEN and IGOR PALATNIK, the defendants, worked to acquire a dormant Canadian shell company, KYC, with the goal of controlling a publicly listed company, first on the CSE and FSE, and ultimately in the United States. In or about March 2019, FARGESEN and PALATNK completed the purchase of KYC through the use of a straw purchaser.

11. In or about December 2018, VITALY FARGESEN and IGOR PALATNIK, the defendants, approached CC-1 and CC-2 with the idea of founding a company based on hemp-derived products. FARGESEN and PALATNIK explained to CC-1 and CC-2 that they had a group of overseas investors who had agreed to provide millions of dollars, had experience taking companies public, and had access to a Canadian shell company that would allow the company to easily be listed on the CSE. FARGESEN also told CC-1 that he had overseas contacts who used unorthodox methods to successfully promote the stock of publicly traded companies.

12. In or about March 2019, VITALY FARGESEN and IGOR PALATNIK, the defendants, and CC-1 and CC-2 founded CanaFarma. With the exception of product-development and direct-to-consumer product marketing, which fell within the responsibilities of CC-1 and CC-2, FARGESEN and PALATNIK maintained complete control over CanaFarma, including all investor fundraising, all company funds, and all corporate decisions.

13. Also in or about March 2019, VITALY FARGESEN and IGOR PALATNIK, the defendants, hired the Purported CEO, who reported directly to FARGESEN and PALATNIK. FARGESEN and PALATNIK chose the Purported CEO to serve as the face of CanaFarma, but did not grant him any meaningful authority over the company's affairs. For example, the Purported CEO did not have access to the company's bank accounts or a seat on the Board of Directors, and worked

4

directly for FARGESEN and PALATNIK, sending emails and signing contracts exclusively at their direction.

14.  CanaFarma initially sold a hemp-infused chewing gum under the brand name Yooforic, and later sold hemp-based tinctures and skin cream. CanaFarma's products, however, were not developed or manufactured by CanaFarma but rather produced by vendors based on licensing agreements with the product's developer.

15.  In or about April 2019, at the direction of VITALY FARGESEN, the defendant, CanaFarma entered into a share acquisition agreement with an entity that had a license to grow hemp in New York state (the "Grow Co."). Pursuant to the agreement, in exchange for $2,133,000 and 5,000,000 CanaFarma shares, the Grow Co. agreed to produce at least 125,000 pounds of hemp and negotiate in good faith with CanaFarma to form a new company to build a hemp processing plant. The Grow Co. leased a farm in Dutchess County, New York for the 2019 harvest, and by in or about November 2019 harvested 128,000 pounds of hemp. CanaFarma did not process or sell the hemp, or use it in any CanaFarma product. Moreover, CanaFarma never built a hemp processing plant. Despite this, beginning in or about March 2020, at the direction of FARGESEN, CanaFarma paid approximately $2,000,000 to a different hemp grower.

## CanaFarma Raises Approximately $14 Million Through Material False Statements

16.    From in or about April 2019 through in or about November 2019, CanaFarma offered shares to prospective investors (the "First Private Placement") and successfully raised approximately $11 million of investor funds.  From in or about May 2020 through in or about June 2020, CanaFarma again offered shares to prospective investors (the "Second Private Placement") and successfully raised approximately $3.7 million of investor funds.

17.    The documents sent to prospective investors during the First Private Placement included a Business Plan and an Executive Summary for Investors. During the Second Private Placement investors typically received an Investor Presentation. During both the First and Second Private Placement, the Purported CEO emailed the documents to prospective investors, including in the Southern District of New York, at the direction of VITALY FARGESEN and IGOR PALATNIK, the defendants. At times, FARGESEN and PALATNIK emailed the documents directly to the prospective investors themselves. FARGESEN also held multiple in-person meetings with prospective investors, including in the Southern District of New York.

18.    The materials sent to prospective investors in both the First and Second Private Placement contained false and misleading statements regarding CanaFarma's management, CanaFarma's products, and CanaFarma's financials. For example:

a.    The Business Plan and Executive Summary sent to prospective investors during the First Private Placement emphasized CanaFarma's "strong management team," but falsely referred to the Purported CEO as the leader of CanaFarma, and VITALY FARGESEN and IGOR PALATNIK, the defendants, who exercised complete control over CanaFarma, as senior vice presidents.

b.    The Business Plan falsely stated that "[CanaFarma] is the only producer in the CBD market with its own: -Exclusive farm for hemp cultivation [and] -Processing facility." Likewise, the Executive Summary for Investors that accompanied the Business Plan falsely claimed that "CanaFarma is a fully integrated cannabis company addressing the entire cannabis spectrum from seed to delivery of consumer products." Moreover, the Investor Presentation, sent to prospective investors during the Second Private Placement, falsely claimed that "CanaFarma independently grows, produces, promotes, sells, and ships our own products," and that CanaFarma had its own "Fully Certified Clean Processing Facility." In truth, CanaFarma did not process the hemp that it grew, did not have a processing facility, and did not manufacture its own products.

c.    The Executive Summary sent to prospective investors during the First Private Placement included reference to CanaFarma's marketing budget for 2019, stating that "[wi]th an investment of $3 million, being used to pay the affiliate networks

for the sales that they generate, we deliver a guaranteed $25 million in first year revenue." In truth, CanaFarma's marketing budget was fraudulently inflated by CC-1 and CC-2, at the direction of FARGESEN and PALATNIK, by at least approximately $1.4 million, which was secretly misappropriated by FARGESEN, PALATNIK, CC-1 and CC-2.

### FARGESEN and PALATNIK Misappropriate Approximately $4 Million Of Investor Funds

19.   From in or about March 2019 through in or about October 2020, VITALY FARGESEN and IGOR PALATNIK, the defendants, misappropriated a total of approximately $4 million of CanaFarma investor funds for their own benefit and to further their scheme to defraud, including:

a.   In or about March 2019, FARGESEN instructed CC-1 and CC-2 to insert a fictitious $1 million of expenses into the marketing budget for CanaFarma, which was later increased to approximately $1.4 million. FARGESEN said that the money should be described falsely as being used to set up overseas product sales and marketing efforts but that, in truth, it would be used to pay overseas affiliates to promote and manipulate CanaFarma's stock price once CanaFarma was publicly listed. At FARGESEN and PALATNIK's direction, CC-2 directed the creation of false invoices to account for the fictious payments and, from on or about April 30, 2019 to on or about July 19, 2019, CC-2 directed wire transfers

8

from CanaFarma, through bank accounts for two entities controlled by CC-1 and CC-2, and finally to a bank account in the name of Direkt Finance LLC, (the "Direkt Finance Account"), controlled by FARGESEN and PALATNIK. Of the approximately $1.4 million that was secretly misappropriated, at least approximately $648,000 was transferred from the Direkt Finance Account to personal bank accounts in the names of FARGESEN and PALATNIK.

b.   In or about September 2019, at the direction of PALATNIK, CanaFarma entered into an alleged consultancy agreement with a company controlled by PALATNIK's associate ("Individual-1"), who was also a purported investor in CanaFarma. Pursuant to the consultancy agreement, from on or about September 26, 2019 to on or about October 31, 2019, CanaFarma transferred $2 million to an account controlled by Individual-1. In truth, and as PALATNIK and FARGESEN later admitted to CC-1 and CC-2, the consultancy agreement was fake and used as a means to refund Individual-1's investment in CanaFarma without Individual-1 returning his CanaFarma shares. Beginning in or about January 2020, CanaFarma's outside auditors raised questions about the purpose of the payments to Individual-1. In or about June 2020, Individual-1 returned approximately $1.67 million to CanaFarma, but retained the balance for purported marketing work that was, in fact, never performed. After CanaFarma was publicly listed, FARGESEN and PALATNIK told CC-1 and CC-2 that Individual-1 was supporting CanaFarma's stock

price overseas by buying CanaFarma stock when the stock price dropped.

        c.  From on or about January 24, 2020 to on or about February 28, 2020, FARGESEN and PALATNIK directed the transfer of approximately $374,000 from CanaFarma to the Direkt Finance Account, and another bank account in the name of Direkt Finance, which they controlled, for a purported road show. In truth, FARGESEN and PALATNIK used these funds for personal expenses, including an approximately $100,000 down payment on a luxury vehicle.

        d.  In or about August 2020, FARGESEN, PALATNIK, and Individual-1 informed CC-2 that CanaFarma needed to increase its reported revenue to achieve their desired stock price. To that end, Individual-1 proposed a plan by which CanaFarma would create fake revenue by round-tripping CanaFarma's own money through one or more third-party companies as follows: First, CanaFarma would pretend to purchase facial recognition software and associated product marketing from entities controlled by Individual-1. Second, the money that CanaFarma purportedly paid for the software and marketing would be returned to CanaFarma under the guise of revenue from sales, with an additional $20,000 added by Inidvidual-1 to make the revenue appear legitimate. On or about September 17, 2020, at the direction of PALATNIK, CC-2 wired approximately $350,000 to a bank account controlled by Individual-1. On or about

October 20, 2020, approximately $376,260 was wired from a bank account controlled by Individual-1 back to CanaFarma.

## Statutory Allegations

20.    From in or about March 2019 through at least in or about October 2020, in the Southern District of New York and elsewhere, VITALY FARGESEN and IGOR PALATNIK, the defendants, and others known and unknown, including CC-1 and CC-2, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, namely (a) to commit fraud in the purchase and sale of securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; and (b) to commit fraud in the offer and sale of securities, in violation of Title 15, United States Code, Section 77q(a) and 77x.

## Objects Of The Conspiracy

21.    It was a part and an object of the conspiracy that VITALY FARGESEN and IGOR PALATNIK, the defendants, and others known and unknown, including CC-1 and CC-2, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing

11

devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

22.   It was further a part and an object of the conspiracy that VITALY FARGESEN and IGOR PALATNIK, the defendants, and others known and unknown, including CC-1 and CC-2, willfully and knowingly, in the offer or sale of securities, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly (a) employed a device, scheme, and artifice to defraud; (b) obtained money and property by means of an untrue statement of a material fact and an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in a transaction, practice, and course of business which operated or would operate as a fraud or deceit upon the purchaser, in violation of Title 15, United States Code, Sections 77q(a) and 77x.

## Overt Acts

23.   In furtherance of the conspiracy and to effect the illegal objects thereof, VITALY FARGESEN and IGOR PALATNIK, the

defendants, along with CC-1 and CC-2, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about April 11, 2019, FARGESEN sent an email to four prospective investors attaching the CanaFarma Business Plan, which contained false and misleading statements, and the CanaFarma marketing budget, which included the fictitious $1 million payment for "EU operation set up and Marketing Costs."

b.   On or about July 19, 2019, PALATNIK sent messages to CC-2 with the bank routing information for the Direkt Finance Account and to confirm that the Direkt Finance Account received misappropriated CanaFarma funds.

c.   On or about September 16, 2019, FARGESEN sent an email to an employee of a workspace company, located in New York, New York, confirming that payment had been wired to secure an office space for CanaFarma in New York, New York.

d.   In or about February 2020, FARGESEN, PALATNIK, CC-1, CC-2, the Purported CEO, and others met at CanaFarma's office in New York, New York to take photographs of CanaFarma's purported management team to be included, in among other material, CanaFarma's investor presentation that was distributed to prospective investors in the Second Private Placement.

e.   On or about May 20, 2020, the Purported CEO, acting at the direction of FARGESEN, emailed a prospective investor in

13

the Second Private Placement the investor presentation, which included false and misleading statements.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Securities Fraud)

The Grand Jury further charges:

24. The allegations contained in paragraphs 1 through 19 and 23 of this Indictment are repeated and realleged as if fully set forth herein.

25. From in or about March 2019 through at least in or about October 2020, in the Southern District of New York and elsewhere, VITALY FARGESEN and IGOR PALATNIK, the defendants, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and of the facilities of national securities exchanges, used and employed, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to

14

wit, FARGESEN and PALATNIK engaged in a scheme to defraud CanaFarma's investors by soliciting funds based upon false and misleading representations, failing to invest investor's funds as promised, manipulating the public stock price of CanaFarma, and secretly misappropriating millions of dollars of CanaFarma funds.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18, United States Code, Section 2.)

## COUNT THREE
### (Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

26. The allegations contained in paragraphs 1 through 19 and 23 of this Indictment are repeated and realleged as if fully set forth herein.

27. From in or about March 2019 through at least in or about October 2020, in the Southern District of New York and elsewhere, VITALY FARGESEN and IGOR PALATNIK, the defendants, and others known and unknown, willfully and knowingly, combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

### Object Of The Conspiracy

28. It was a part and an object of the conspiracy that VITALY FARGESEN and IGOR PALATNIK, the defendants, willfully and knowingly, having devised and intending to devise a scheme and

artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, FARGESEN and PALATNIK, and others known and unknown, conspired to defraud CanaFarma's investors by soliciting funds based upon false and misleading representations, failing to invest investor's funds as promised, manipulating the public stock price of CanaFarma, and secretly misappropriating millions of dollars of CanaFarma funds, through the use of interstate wires, including emails and telephone calls to and from New York, New York.

(Title 18, United States Code, Section 1349.)

## COUNT FOUR
### (Wire Fraud)

The Grand Jury further charges:

29.    The allegations contained in paragraphs 1 through 19 and 23 of this Indictment are repeated and realleged as if fully set forth herein.

30.    From in or about March 2019 through at least in or about October 2020, in the Southern District of New York and elsewhere, VITALY FARGESEN and IGOR PALATNIK, the defendants, willfully and

knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, FARGESEN and PALATNIK and others known and unknown, through the use of interstate wires, including emails and telephone calls to and from New York, New York, participated in a scheme to defraud CanaFarma's investors by soliciting funds based upon false and misleading representations, failing to invest investor's funds as promised, manipulating the public stock price of CanaFarma, and secretly misappropriating millions of dollars of CanaFarma funds.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATIONS

31.  As a result of committing one or more of the offenses charged in Counts One through Four of this Indictment, VITALY FARGESEN and IGOR PALATNIK, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency

representing the amount of proceeds traceable to the commission of said offenses that the defendant personally obtained.

<u>Substitute Assets Provision</u>

32.   If any of the above-described forfeitable property, as a result of any act or omission by the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code Section 2461, to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981(a)(1)(C);
Title 21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461.)

_____
GRAND JURY FOREPERSON

_____
AUDREY STRAUSS
United States Attorney

18

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

VITALY FARGESEN and
IGOR PALATNIK,

Defendants.

### SEALED INDICTMENT

21 Cr. _____

(Title 15, United States Code, Sections
78j(b), 77q(a), 77x & 78ff; Title 17, Code of
Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Sections 2,
371, 1343 & 1349.)

_____
Foreperson

AUDREY STRAUSS
_____
United States Attorney

10/04/21
(CA)

SEALED INDICTMENT FILED
WITH ARREST WARRANTS
KH PARKER
USMJ