UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>-against-<br><br>VITALY FARGESEN, IGOR PALATNIK,<br><br>                Defendants. | No. 21 CR 602 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is the motion of Defendants Vitaly Fargesen and Igor Palatnik[1] pursuant to Federal Rule of Criminal Procedure 15(a)(1).  (Dkt. no. 78.)  Defendants seek to take remote video trial testimony or remote video depositions of three witnesses who reside in the United Arab Emirates (UAE) and are not United States citizens.  Trial is currently scheduled to begin on February 27, 2023.  For the reasons that follow, the Court concludes that Defendants have demonstrated "exceptional circumstances" warranting remote depositions:  the witnesses are unavailable, and their testimony is material and in the interests of justice.

    **A.**    **The Indictment**

    The October 4, 2021 Indictment charges Defendants with four counts of securities fraud, wire fraud, and conspiracy to commit

---

[1] Defendant Palatnik filed the notice of motion of July 22, 20222.  (Dkt. no. 78.)  Later that day, Defendant Fargesen moved to join in Defendant Palatnik's motion.  (Dkt. no. 82.)  That motion is granted.

1

securities fraud and wire fraud.  (Dkt. no. 1.)  According to the Indictment, Defendants held executive positions at CanaFarma Corp. and, following a merger with a Canadian company, CanaFarma Hemp Products Corp. (together with CanaFarma Corp, "CanaFarma"). (Id. ¶¶ 1-5.)  Defendants allegedly defrauded CanaFarma investors by soliciting more than $14 million in funds with false and misleading representations concerning CanaFarma and causing the manipulation of the public stock price of CanaFarma. (Id. ¶ 8.)  According the indictment, Defendants ultimately misappropriated some $4 million of CanaFarma funds for their own benefit:  (1) a fictitious $1.4M marketing expense, which was directed to an account controlled by Defendants (id. ¶ 19(a)); (2) a fictitious $2M consulting agreement with "Individual-1" for marketing services that were never performed as a means of refunding Individual-1's investment in CanaFarma without Individual-1's returning his CanaFarma shares (id. ¶ 19(b)); (3) a fictitious $374,000 expense for a purported road show, which was directed to accounts controlled by Defendants (id. ¶ 19(c)); and (4) in a plan proposed by Individual-1, a fictious $350,000 purchase of software and services from one or more third-party companies controlled by Individual-1, which funds were then returned to CanaFarma under the guise of revenue from sales to help achieve Defendants' desired stock price (id. ¶ 19(d)).

B.  **The Motion**

Defendants seek to take remote video trial testimony or remote video depositions of Merdan Gurbanov ("Merdan"), Mekan Gurbanov ("Mekan"), and Vitaly Snagovskiy ("Snagovskiy").  In a declaration sworn to by Merdan and filed in support of Defendants' motion, Merdan states that he, his brother Mekan, and his friend Snagovskiy invested in CanaFarma on Merdan's recommendation (Declaration of Merdan Gubranov in Support of Defendants' Rule 15 Motion ¶¶ 3-6, dated July 22, 2022 [dkt. no. 80]); that all three live and work in Dubai, UAE, and that none is a United States citizen (id. ¶¶ 8-9); that all three have read the Indictment and believe the accusations are false (id. ¶¶ 12-13); that all three are willing to testify but are not willing to travel to the United States to testify in person (id. ¶¶ 29-33); that the Government never contacted any of them regarding CanaFarma or this case (id. ¶ 15); and that "Individual-1" in the Indictment refers to Merdan (id. ¶ 14).

As to specific facts set forth in the Indictment, Merdan declares that the $1.4M allegedly misappropriated by Defendants was in fact approved by a group of controlling investors in CanaFarma, including himself, Mekan, and Snagovskiy (id. ¶¶ 16-18); that the allegedly fictitious $2M consulting agreement between CanaFarma and Individual-1 (Merdan) was not fake, did not refund Merdan's investment in CanaFarma, and in fact resulted in the rendering of significant services to the company

(id. ¶¶ 19-21); that the $350,000 paid for software and services to companies controlled by Individual-1 (Merdan) were similarly legitimate (id. ¶¶ 22-26); and that, contrary to the Indictment, Individual-1 (Merdan) never suggested the $350,000 "round-tripping" scheme to increase revenues artificially (id. ¶ 27).

Defendants argue that they have established exceptional circumstances under Rule 15(a)(1) because the proposed testimony goes to the core of the Indictment and is therefore material to their defense and, in light of the witnesses' stated and understandable unwillingness to travel to the United States to testify, leave to take their remote trial testimony or to conduct remote depositions should therefore be granted in the interests of justice.  (See generally (Defendants' Memorandum of Law in Support of Their Rule 15 Motion ("Mot."), dated July 22, 2022 [dkt. no. 79].)

The Government opposes the motion principally on the grounds that Defendants (1) have not established that Mekan and Snagovskiy are unavailable to testify in person at trial and (2) have not established that any testimony would be material because it would either be inadmissible, cumulative of other testimony or evidence that could be introduced, or would implicate the witnesses in wrongdoing and thus undermine Defendants' defense.  (Government's Memorandum in Opposition to Defendants' Rule 15 Motion ("Opp.") at 8-12, dated August 12, 2022 [dkt. no. 83].)

Defendants submitted a reply in further support of their motion on August 19, 2022.  (Defendants' Reply Memorandum in Further Support of Rule 15 Motion ("Reply"), dated August 19, 2022 [dkt. no. 85].)

C.   **Applicable Law**

Under Rule 15, a defendant may depose witnesses to preserve their testimony if there are "exceptional circumstances and in the interest of justice."  Exceptional circumstances are established where defendants show that the witness is unavailable, that the testimony is material, and that the testimony will further the interests of justice.  United States v. Cohen, 260 F.3d 68, 78 (2d Cir. 2001).  As a general matter, the discretion afforded district courts to decide Rule 15 motions is "considerable."  United States v. Pham, 2015 WL 7871348, at *1 (S.D.N.Y. Dec. 4, 2015).

"Unavailability" is determined, for purposes of Rule 15, "according to the practical standard of whether under the circumstances the [movant] has made a good-faith effort to produce the person to testify at trial."  United States v. Johnpoll, 739 F.2d 702, 709 (2d Cir. 1984) (deeming witnesses who refused to travel to the U.S. unavailable).  "A movant must provide specific reasons for a witness's unavailability," Pham, 2015 WL 7871348, at *1, and "[c]onclusory or speculative statements regarding unavailability are insufficient," United

States v. Little, 2014 WL 1744824, at *1 (S.D.N.Y. Apr. 23, 2014).

Evidence is material if it is highly relevant to a central issue in the case. United States v. Grossman, 2005 WL 486735, at *3 (S.D.N.Y. Mar. 2, 2015); see also United States v. Vilar, 568 F. Supp. 2d 429, 440 (S.D.N.Y. 2008). Nevertheless, a court may "properly deny [a] motion [to depose] if the proposed testimony would be cumulative." United States v. Stein, 482 F. Supp. 2d 360, 365 (S.D.N.Y. 2007) (cleaned up).

"When the first two prongs of the exceptional-circumstances test are met, the third prong, necessity to prevent a failure of justice, is likely satisfied if there are no substantial countervailing factors militating against the taking of the deposition." Wey, 2017 WL 237651, at *24 (cleaned up).

**D. Discussion**

    **1. Defendants Have Demonstrated the Witnesses' Unavailability**

The Government does not dispute that Merdan's declaration establishes his unavailability to testify in person at trial. (Opp. at 8.) The Court agrees that Defendants have shown through their motion and the Merdan Declaration his unavailability to testify at trial despite their good faith efforts to produce him. See, e.g., Vilar, 568 F. Supp. 2d at 439-449.

6

The Government does dispute, however, whether Defendants have established the unavailability of the other two witnesses who did not submit declarations--Mekan and Snagovskiy.  (Opp. at 11-12.)  According to the Government, Merdan's statements as to Mekan and Snagovskiy's unavailability to testify in person in the United States is mere hearsay unaccompanied by descriptions from counsel or otherwise of "any efforts to produce [them], such as offers to pay for the trips or engagement with Government counsel about any via or border-crossing concerns."  (Id. at 11.)

It is well established that movants need not present proposed witnesses' affidavits or prior statements to establish unavailability.  See, e.g., United States v. Wey, 2017 WL 237651, at *24 (S.D.N.Y. Jan. 18, 2017); see also Vilar, 568 F. Supp. 2d at 438.  Instead, "Courts may accept the assertions of counsel on the facts relating to unavailability, as long as those assertions are neither conclusory nor speculative."  Grossman, 2005 WL 486735, at *3.  According to the Merdan Declaration, Mekan and Snagovskiy live in Dubai, are not United States Citizens, and are willing to testify about their involvement in CanaFarma but are unwilling to travel to the United States to testify in person, in part due to the length and expense of the trip and the possibility that they might be prosecuted (wrongly, in their view) if they were to enter the United States.  (Merdan Decl. ¶¶ 8-9, 29-33.)  This is supported

by the representations of counsel, who note that the witnesses live abroad, are unwilling to travel to the United States to testify on Defendants' behalf, and would be willing to testify remotely but are outside the Court's subpoena power.  (Mot. at 6, 10.)  The Court also notes that the Government does not dispute for purposes of this motion Merdan's unavailability to testify, despite the absence of any specific showing that counsel attempted to induce his testimony by, for example, paying for his travel.

The Court concludes that, under the circumstances, Defendants have established a good-faith effort to produce all three witnesses and have thus met their burden of establishing unavailability.  Regardless of any offers to pay for travel, the Court credits counsel's representation (confirmed by the Court's own experiences) that "direct flights between Dubai and New York are 14 hours," "any trip between the two, even in the best of times, causes significant disruption to the Witnesses' businesses and personal lives."  (Mot. at 6.)  The Court also credits counsel's representation that "after watching the Government's prosecution of [Defendants], all three Witnesses mistrust the United States Government and do not want to subject themselves to its jurisdiction."  (Id.)  Given the degree of mistrust, the Court finds it unlikely that even the promise of immunity (were the Government to offer it) could induce the witnesses' attendance at trial.

### 2. Defendants Have Demonstrated That the Witnesses' Testimony is Material

The Court has little trouble concluding that the testimony sought by Defendants is material in that it is highly relevant to the central issue in the case, namely, whether Defendants committed or conspired to commit securities fraud or wire fraud. The Indictment specifically alleges that Defendants secretly misappropriated $1.4M through fictitious marketing expenses, entered into a false $2M consulting agreement with Merdan for marketing services, and carried out a plan, proposed by Merdan, to route some $350,000 to falsely inflate revenue.[2] The witnesses' testimony, as described in the Merdan Declaration and summarized in Defendants' briefing, directly contradicts these allegations. All three witnesses, as investors in CanaFarma, claim they will provide testimony that they were controlling investors in CanaFarma and approved the $1.4M transfer to Defendants, which if true may well undermine the Government's claim of misappropriation. (Merdan Decl. ¶¶ 16-18.) And Merdan says he will testify that the consulting agreement was for actual services rendered (id. ¶¶ 19-21) and that the $350,000 in transfers similarly were for legitimate transactions (id. §§ 22-

---

[2] Defendants and Merdan claim that the Government's reference to "Individual-1" in the indictment is, in fact, a reference to Merdan. While the Government does not expressly concede this point, it does not attempt to refute it and thus concedes it implicitly. For purposes of this motion, the Court accepts that Merdan is Individual-1.

28).  This testimony similarly would undermine the Government's allegations as to the core issue in this prosecution.

The Government makes three principal arguments as to why Defendants have nevertheless failed to meet their burden of establishing that the testimony is material.

First, the Government contends that the witnesses' testimony is immaterial because it is cumulative of other testimony or evidence.  (Opp. at 9.)  As an example, the Government suggests that Defendants could show that the contracts with Merdan were legitimate "through records and examples of marketing done by [Merdan]" as well as other CanaFarma executives, accountants, and auditors in the United States who can be compelled to testify.  (Opp. at 9.)  The Court finds this argument to be unpersuasive.  The Indictment alleges specific illegal conduct, and the testimony offered appears to be uniquely held by the three witnesses.  That other documents and testimony may also be relevant to the defense does not mean that the witnesses' testimony will be so cumulative as to be immaterial.  See, e.g., United States v. Banki, 2010 WL 1459442, at *1 (S.D.N.Y. Apr.6, 2010); United States v. Sun, 93 F.R.D. 558, 559 (S.D.N.Y. 1982).

The Government next contends that "significant aspects" of the witnesses' testimony would be inadmissible.  (Opp. at 10.) The Government does not, however, argue that the entirety of the testimony would be inadmissible, and the examples of potentially

inadmissible testimony provided by the Government go to certain assertions made about the Government's witnesses who are unindicted alleged co-conspirators[3]--not the core of the witnesses' proposed testimony, which contradicts explicit allegations in the Indictment as to the conduct of the Defendants.  The Court thus rejects this argument.  As discussed in more detail below, the Court concludes that prerecorded remote depositions are appropriate under the circumstances, so to the extent the Government wishes to challenge the admissibility of particular aspects of the witnesses' testimony, it will have the opportunity to do so in advance of trial.

Finally, the Government argues that the Merdan Declaration implicates him, as well as Mekan and Snagovskiy, in the alleged wrongdoing and thus does not support Defendants' defense.  But, assuming arguendo that the proposed testimony implicates the witnesses in criminal activity, it does not follow that it does not also exculpate Defendants.  Moreover, Courts have granted Rule 15 depositions in circumstances where the witnesses were unavailable "due to fear that they will be arrested as co-

---

[3] As a backdrop to their Rule 15 motion, Defendants claim that two unindicted co-conspirators provided the bulk of the testimony underpinning the charges in the Indictment (Declaration of Kari Parks in Support of Defendants' Rule 15 Motion ("Parks Decl."), dated July 22, 2022, ¶ 2 [dkt. no. 81]), when, in fact, it is the unindicted co-conspirators "who stole millions from CanaFarma and are avoiding prison by pointing their fingers at" Defendants (Mot. at 2).

11

conspirators," Banki, 2020 WL 1459442, at *1, and where a witness "was a co-conspirator with intimate knowledge of the scheme," United States v. Vo, 53 F. Supp. 3d 77, 81-82 (D.D.C. 2014). That one or more witnesses may provide incriminating testimony does not mean that their testimony about issues core to this case is immaterial.

### 3. No Countervailing Factor Militates Against the Taking of the Depositions

Because Defendants have established unavailability and materiality, the interests of justice prong is likely satisfied so long as there are no substantial countervailing factors militating against the taking of the depositions. The Government argues that depositions will not further the interests of justice because (1) the cooperation of the UAE will be required but is not assured, and the UAE could, for example, deprive the Government of the opportunity to cross-examine the witnesses and (2) the testimony is fundamentally unreliable. (Opp. at 13-14.)

As to the cooperation of the UAE and the concern that the Government may be deprived of cross-examination, the parties shall confer and promptly begin the process of requesting letters rogatory (if necessary) and obtaining the necessary approvals, including that the Government be permitted to cross-examine the witnesses. If the Government is unable to cross-examine the witnesses, then the depositions may proceed but any

12

resulting testimony would almost certainly be deemed inadmissible at trial under Federal Rule of Evidence 403.

The Government's concerns about reliability similarly do not militate against taking depositions under the circumstances. As Defendants point out, perjury is unlawful under UAE law. (Reply at 3.)  Nevertheless, the parties shall attempt to have the depositions taken at the U.S. Consulate in Dubai or U.S. Embassy in Abu Dhabi so that U.S. officials can swear the witnesses and provide assurances of formality and accuracy.  See Banki, 2010 WL 1063543, at *3.  Because the Court grants Defendants' motion to take remote depositions--but not to present live remote testimony at trial--the Government will have an opportunity to move in limine to exclude all or part of the testimony under the Federal Rules of Evidence.  To the extent the witnesses are unable to be sworn in at an embassy or consulate, that may be a relevant consideration in any eventual motion in limine.

The Court concludes that taking the witnesses' testimony is in the interests of justice and that the Government's concerns, while legitimate, are insufficient to overcome the Defendants' interest in obtaining this material testimony that otherwise would be unavailable.

### E. Conclusion

Defendants have met their burden of establishing exceptional circumstances warranting leave to take remote

depositions under Rule 15(a)(1).  The parties shall confer and work in good faith to carry out the steps necessary to take reliable and fair video depositions of the three witnesses.

The Clerk of the Court shall mark the motions (dkt. nos. 78 and 82) as closed.

**SO ORDERED.**

Dated:      September 8, 2022
            New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge